## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| MGF HOLDINGS, INC., | ) | |
| | ) | |
| Plaintiff-Counterdefendant, | ) | |
| | ) | Case No. 1:05-CV-01338 |
| v. | ) | Judge Ellen Segal Huvelle |
| | ) | |
| YOUR GIRL FRIDAY, LLC, | ) | |
| | ) | |
| Defendant-Counterplaintiff. | ) | |
| | ) | |

## ANSWER TO PLAINTIFF'S COMPLAINT AND
## COUNTERCLAIMS OF DEFENDANT YOUR GIRL FRIDAY, LLC

Defendant Your Girl Friday, LLC ("YGF"), by and through its undersigned counsel, pursuant to Rules 7(a) and 8 of the Federal Rules of Civil Procedure, hereby answers the complaint filed by Plaintiff MGF Holdings, Inc. ("Plaintiff"), as follows.

1.      Paragraph 1 of the complaint contains legal conclusions to which no answer is required.

2.      Paragraph 2 of the complaint contains legal conclusions to which no answer is required.

3.      YGF lacks sufficient knowledge or information to form a belief as to the allegations in paragraph 3 of the complaint, except to admit that:  MGF Holdings, Ltd. (hereinafter, "Holdings Limited") was registered as a limited liability company with the Ohio Secretary of State on or about March 24, 2004, Registration No. 1451748; and that Julie Hagenmaier (hereinafter, "Ms. Hagenmaier") was appointed statutory agent for Holdings Limited on or about March 17, 2004 and listed her address as 1776 Mentor Avenue, Cincinnati, Ohio 45212.  Further answering paragraph 3, neither Plaintiff nor Holdings Limited are of record as either domestic entities organized in the District of Columbia or as foreign entities registered to transact business in the District of Columbia.

1

4.      YGF denies that Plaintiff is the owner of the service mark "MY GIRL FRIDAY" for concierge services, as alleged in paragraph 4 of the complaint.  Further answering paragraph 4, YGF lacks sufficient knowledge or information to form a belief as to whether Plaintiff licenses other entities to use the service mark "MY GIRL FRIDAY" for concierge services throughout the United States, except to deny that Plaintiff owns any actionable proprietary rights in "MY GIRL FRIDAY."

5.      YGF denies the allegations in paragraph 5 of the complaint.  Further answering paragraph 5, YGF admits that:  the District of Columbia's Department of Consumer and Regulatory Affairs issued a Certificate of Organization to YGF on March 16, 2004; YGF received its federal employer identification number on March 23, 2004 and its Notice of Business Tax Registration from the District of Columbia on March 29, 2004; and, YGF's business address is 1802 Swann Street, N.W., Apartment B, Washington, D.C. 20009.

6.      Paragraph 6 of the complaint contains legal conclusions to which no answer is required.

7.      Paragraph 7 of the complaint contains legal conclusions to which no answer is required.

8.      YGF lacks sufficient knowledge or information to form a belief as to the allegations in paragraph 8 of the complaint.

9.      YGF lacks sufficient knowledge or information to form a belief as to the allegations in paragraph 9 of the complaint, except to state that, upon information and belief, neither Plaintiff, Holdings Limited, My Girl Friday, Inc., nor MY GIRL FRIDAY are of record as either domestic entities organized in the District of Columbia or as foreign entities registered to transact business in the District of Columbia.  Further answering paragraph 9, YGF states that Ms. Hagenmaier has publicly stated that providers of Girl Friday services in the 64 markets alleged in paragraph 9 are not building the "MY GIRL FRIDAY" brand or building the "MY GIRL FRIDAY" business.

10.     YGF lacks sufficient knowledge or information to form a belief as to the allegations in paragraph 10 of the complaint.

11.     YGF denies the allegations in paragraph 11 of the complaint.

12.     YGF denies the allegations in paragraph 12 of the complaint.

13.     YGF denies the allegations in paragraph 13 of the complaint.

14.     YGF lacks sufficient knowledge or information to form a belief as to the allegations in paragraph 14 of the complaint, except to state that YGF denies that it was using the name YOUR GIRL FRIDAY for the same type of concierge services as offered by Plaintiff in the Washington, D.C. area.

15.     YGF denies the allegations in paragraph 15 of the complaint, except to state that My Girl Friday, Inc. sent YGF a letter dated April 12, 2005.

16.     Paragraph 16 of the complaint contains legal conclusions to which no answer is required.  To the extent an answer is required, YGF denies the allegations in paragraph 16 of the complaint, except to state that YGF has not ceased doing business.

17.     Paragraph 17 of the complaint contains legal conclusions to which no answer is required.  To the extent an answer is required, YGF denies the allegations in paragraph 17 of the complaint.

18.     YGF incorporates its responses to paragraphs 1-17 of the complaint as if fully set forth herein.

19.     Paragraph 19 of the complaint contains legal conclusions to which no answer is required.  To the extent an answer is required, YGF denies the allegations in paragraph 19 of the complaint.

20.    Paragraph 20 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 20 of the complaint.

21.    Paragraph 21 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 21 of the complaint.

22.    Paragraph 22 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegation in paragraph 22 of the complaint.

23.    Paragraph 23 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 23 of the complaint.

24.    YGF incorporates its responses to paragraphs 1-23 of the complaint as if fully set forth herein.

25.    Paragraph 25 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 25 of the complaint.

26.    Paragraph 26 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 26 of the complaint.

27.    Paragraph 27 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 27 of the complaint.

28.    Paragraph 28 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 28 of the complaint.

29.    Paragraph 29 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegations in paragraph 29 of the complaint.

30.    Paragraph 30 of the complaint contains legal conclusions to which no answer is required. To the extent an answer is required, YGF denies the allegation in paragraph 30 of the complaint.

31.    Plaintiff is not entitled to any relief that it seeks in its Prayer.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Plaintiff has failed to state a claim upon which relief can be granted against YGF.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's claims against YGF are barred by the doctrine of estoppel.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff's claims against YGF are barred by the doctrine of unclean hands.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claims against YGF are barred by the doctrine of laches.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims against YGF are barred by the doctrine of waiver.

### SIXTH AFFIRMATIVE DEFENSE

The uses alleged in the complaint are fair uses.

**SEVENTH AFFIRMATIVE DEFENSE**

The purported "MY GIRL FRIDAY" mark is generic.

**EIGHTH AFFIRMATIVE DEFENSE**

The purported "MY GIRL FRIDAY" mark is highly descriptive.

**NINTH AFFIRMATIVE DEFENSE**

The purported "MY GIRL FRIDAY" mark is not distinctive.

**TENTH AFFIRMATIVE DEFENSE**

The purported "MY GIRL FRIDAY" mark has not acquired secondary meaning.

**ELEVENTH AFFIRMATIVE DEFENSE**

The conduct alleged in the complaint did not result in, and is not likely to result in, any potential or actual confusion.

**TWELFTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against YGF are barred by the First Amendment to the United States Constitution.

**THIRTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against YGF are barred by the privilege of fair competition.

**FOURTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's alleged damages have been caused by persons other than YGF.

**FIFTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against YGF are barred in whole or in part by the doctrine of mitigation.

**SIXTEENTH AFFIRMATIVE DEFENSE**

Plaintiff has failed to join necessary and indispensable parties.

**SEVENTEENTH AFFIRMATIVE DEFENSE**

Plaintiff is not a consumer within the meaning of D.C. Code § 28-3904.

**EIGHTEENTH AFFIRMATIVE DEFENSE**

Plaintiff's claims against YGF are barred by the doctrine of abandonment.

**NINETEENTH AFFIRMATIVE DEFENSE**

At all times relevant to the complaint, YGF has acted in good faith.

**TWENTIETH AFFIRMATIVE DEFENSE**

Plaintiff's claims against YGF are barred by the doctrine of acquiescence.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**

Plaintiff's claims against YGF are barred by the doctrine of administrative exhaustion.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**

YGF reserves the right to assert additional defenses as discovery proceeds.

<u>**COUNTERCLAIMS**</u>

**FACTS COMMON TO ALL COUNTS**

**I.     The Ubiquity of "Girl Friday"**

1.      "At last he lays his head flat upon the ground, close to my foot, and sets my other foot upon his head, as he had done before; and after this made all the signs to me of subjection, servitude, and submission imaginable, to let me know how he would serve me so long as he lived.  I understood him in many things, and let him know I was very well pleased with him.  In a little time I began to speak to him; and teach him to speak to me: and first, I let him know his name should be Friday, which was the day I saved his life . . . .  [F]or never man had a more faithful, loving, sincere servant than Friday was to me; without passions, sullenness, or designs, perfectly obliged and engaged; his very affections were tied to me, like those of a child to a father . . . .  And now my life began to be so easy . . . ."  And thus, "Man Friday" was born—the all-purpose personal assistant to Robinson Crusoe, the shipwrecked protagonist after which Daniel Defoe's classic 1719 novel was named.  In the almost 300 years since the publication of *Robinson Crusoe*, Defoe's "Man Friday" has

become woven into the fabric of the English language and has spawned its gender counterpart—"Girl Friday."

2.      Julie Hagenmaier ("Ms. Hagenmaier") is the principal of Plaintiff-Counterdefendant MGF Holdings, Ltd. ("Holdings Limited"), wrongly named in the underlying complaint as Plaintiff MGF Holdings, Inc.

3.      Ms. Hagenmaier has stated publicly that she did not come up with the name "Girl Friday."  Instead, Ms. Hagenmaier "met with a woman who [wa]s in her 80s" and that was a counselor and mentor at the Service Corps of Retired Executives.  That woman's name is Ruth van Gelder-Bochner.  According to an article posted on http://www.score.org, "Ruth . . . coined the company's name . . . ."

4.      "Girl Friday" is a noun.  "My Girl Friday" is a noun phrase.  "Girl Friday" is defined in the dictionary as a "female assistant (as in an office) entrusted with a wide variety of tasks."  "Girl Friday" also is a common idiom defined as "[a]n efficient and faithful female assistant, as in *I'll have my girl Friday get the papers together*."

5.      Inserting the possessive pronoun "My" before "Girl Friday" does not produce a term that's defined any differently than the dictionary defines "Girl Friday."  Ms. Hagenmaier has used "Girl Friday" and "My Girl Friday" interchangeably to mean the same thing.  For example, Ms. Hagenmaier has stated publicly that:  "My Girl Friday is a personal concierge service.  We run errands for people, . . . take your cat to the vet, do your grocery shopping, take your car in for an oil change, anything that you don't have time to do."  The opening page of egirlfriday.com states in part that "MY GIRL FRIDAY" encompasses the "true concept of the personal assistant" because:  "A Girl Friday will do your laundry, pick up your groceries and prep your dinner all while waiting for the cable guy or your furniture to be delivered.  Picking up your dry-cleaning, taking your car in for an oil change or the cat to the vet are all requests that make your life easier."

6.    My Girl Friday, Inc., another Ohio corporation established by Ms. Hagenmaier, sponsors the website http://www.egirlfriday.com.  Through Ms. Hagenmaier's public statements and Holdings Limited's promotional material, members of the public are directed to the egirlfriday.com website for information about the services allegedly offered under the purported mark "MY GIRL FRIDAY."

7.    The egirlfriday.com website confirms that the purported mark "MY GIRL FRIDAY" denotes services performed by a "Girl Friday."

8.    Ms. Hagenmaier's public statements confirm that the purported mark "MY GIRL FRIDAY" denotes services performed by a "Girl Friday."  For example, Ms. Hagenmaier has stated publicly that: "[W]e're hoping that people understand that we're problem-solvers.  You tell us what your problem is, and we can solve it for you.  And that's what we're hoping that, you know, you can ask us whatever you want, home, work, life, whatever, and we can solve it for you, because that's what a Girl Friday can do.  She's a well-rounded individual who can take care of you."  Ms Hagenmaier also has stated publicly that "most" of the services offered under the purported mark "MY GIRL FRIDAY" are "not rocket science."

9.    The term "Girl Friday" was made popular in the 1940 romantic comedy *His Girl Friday*, starring Cary Grant and Rosalind Russell.  *His Girl Friday* has been rated by *Time Magazine* as one of the top 100 movies of all time.  The film is listed on the Internet Movie Database's list of top 250 films, was #19 on the American Film Institute's "100 Years, 100 Laughs," and has been selected for preservation in the United States National Film Registry.

10.    Ms. Hagenmaier has stated publicly that "GIRL FRIDAY" is "a term from the [19]40s that really we've taken and just brought…up-to-date."

11.     State and federal courts have used the term "Girl Friday" in written opinions to refer to persons who perform services identical, or substantially similar, to the services offered by Holdings Limited under the purported mark "MY GIRL FRIDAY."

12.     The term "Girl Friday" is used in newspapers and magazines to refer to persons that perform services identical, or substantially similar, to the services offered by Holdings Limited under the purported mark "MY GIRL FRIDAY."

13.     Scores of businesses throughout the United States use "Girl Friday" or "Gal Friday" in their business name and offer services that are identical, or substantially similar, to the services offered by Holdings Limited under the purported mark "MY GIRL FRIDAY."

14.     Businesses in Holding Limited's home state of Ohio are no exception.  For example, Joann Gill of Lima, Ohio registered the business "MY GIRL FRIDAY" with the Ohio Secretary of State on or about February 14, 1989.  Ms. Gill stated in her filings with the Secretary of State that the general nature of the "MY GIRL FRIDAY" business was "Office Services, Wedding Invitations & Planning, Miscellaneous Errands."  Upon information and belief, Ms. Gill used "MY GIRL FRIDAY," and provided the "MY GIRL FRIDAY" services described in her filings with the Ohio Secretary of State, until on or about February 28, 1994.

15.     When Ms. Hagenmaier first attempted to register "MY GIRL FRIDAY" in Ohio, the Ohio Secretary of State prohibited her from doing so.  Prior to February 2000, Collinsworth Enterprises, Inc., a company formed by Ms. Hagenmaier (then named Julie Collinsworth), filed a Trade Name Registration form with the Ohio Secretary of State, seeking to register "MY GIRL FRIDAY."  Collinsworth Enterprises stated in the Trade Name Registration form that the nature of the business conducted under the proposed trade name "MY GIRL FRIDAY" was:  "of a [*sic*] business & personal services.  We teach computer classes, provide maid service & act as a personal assistent [*sic*] when needed."

16.    By letter dated February 2, 2000, the Ohio Secretary of State rejected Collinsworth Enterprises' attempt to register "MY GIRL FRIDAY" as a trade name. In that letter, the Ohio Secretary of State stated in part: "The proposed corporate name is not available. We have on file #RN207770, GIRL FRIDAY. To obtain consent for the use of this name contact: DORIS J. VAN LUIT, 4115 MYRTLE AVE, CINCINNATI, OHIO 45236."

17.    Collinsworth Enterprises obtained Ms. Van Luit's consent to use "MY GIRL FRIDAY" on or about February 11, 2000 by executing a form titled "CONSENT FOR USE OF SIMILAR NAME."

18.    As recently as June 2005, three individuals formed a general partnership in Columbus, Ohio, and filed a Name Registration form with the Ohio Secretary of State seeking to register the trade name "GIRL FRIDAY." According to the filing, the nature of the business conducted under the trade name "GIRL FRIDAY" is "Personal Assistant." The Ohio Secretary of State approved the trade name and registered it on or about June 17, 2005, Registration No. 1551043.

## II.    The PTO has Required a Disclaimer of "GIRL FRIDAY"

19.    "MY GIRL FRIDAY" is not a federally registered trademark. On or about May 10, 2004, Holdings Limited filed a trademark application with the U.S. Patent and Trademark Office ("PTO"), Serial No. 78415742, seeking to register "MY GIRL FRIDAY" as a trademark pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.* The PTO has not published that application for opposition, and it therefore remains pending as of the date of this filing.

20.    In its May 2004 application to the PTO, Holdings Limited stated that "MY GIRL FRIDAY" was "first use[d]" "anywhere" or "in commerce" on July 22, 2002.

21.    In connection with Holdings Limited's application, the PTO stated in part: "Applicant must insert a disclaimer of 'GIRL FRIDAY' in the application because the applicant's

services are those that are regularly provided by a girl Friday. See attached dictionary definitions of 'girl Friday.'" The PTO stated further that "[t]he following is the accepted standard format for a disclaimer: No claim is made to the exclusive right to use 'GIRL FRIDAY' apart from the mark as shown."

22.    Holdings Limited's counsel at that time agreed that a disclaimer was required. Holdings Limited's counsel at that time agreed to the PTO's proposed language for the disclaimer.

23.    Holdings Limited's trademark application contains the following disclaimer: "NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'GIRL FRIDAY' APART FROM THE MARK AS SHOWN."

24.    On or about March 14, 2005, Holdings Limited's current counsel asked the PTO to remove the disclaimer. The PTO has refused to remove the disclaimer as of the date of this filing.

**III.    The "Public's" So-Called "Knowledge" of "MY GIRL FRIDAY"**

25.    The services that Holdings Limited allegedly offers under the purported mark "MY GIRL FRIDAY" have materially changed over time. According to egirlfriday.com, "[t]he [MY GIRL FRIDAY] business was originally created to work with busy professionals in their home environment." Then, according to egirlfriday.com, "[t]hrough exposure from the Greater Cincinnati Chamber of Commerce, corporations began approaching [Ms. Hagenmaier] about integrating My Girl Friday's services with their current employee benefits."

26.    Now, according to Ms. Hagenmaier, the "MY GIRL FRIDAY" business is focused on franchising. Ms. Hagenmaier has stated publicly: "So we had new branding, new website, new— we had research done on our old brand, saying that it wouldn't do well in this market segment, so we had to completely revamp our whole look and feel in order to make it franchise friendly." And, the most recent version of egirlfriday.com states: "My Girl Friday, Inc. is a concierge company designed for individuals who travel and need help in their home environment or at their destination

location while on the road. . . .  A Girl Friday has the ability to go into a client's personal life and home environment to help where travelers are experiencing the most stress."

27.    Consumers within the District of Columbia do not recognize the purported mark "MY GIRL FRIDAY."  Consumers outside of the District of Columbia do not recognize the purported mark "MY GIRL FRIDAY."

28.    Consumers within the District of Columbia do not associate the purported mark "MY GIRL FRIDAY" with Holdings Limited.  Consumers outside of the District of Columbia do not associate the purported mark "MY GIRL FRIDAY" with Holdings Limited.

29.    Consumers within the District of Columbia do not associate the purported mark "MY GIRL FRIDAY" with Holdings Limited's alleged services.  Consumers outside of the District of Columbia do not associate the purported mark "MY GIRL FRIDAY" with Holdings Limited's alleged services.

30.    Upon information and belief, Holdings Limited does not have standing to claim any rights in "MY GIRL FRIDAY."  After Collinsworth Enterprises obtained consent from Ms. Van Luit to use the name "MY GIRL FRIDAY" on February 11, 2000, the Ohio Secretary of State registered "MY GIRL FRIDAY" as a trade name, Registration No. 1136873, on or about February 22, 2000.  The "Expiration Date" for the trade name "MY GIRL FRIDAY" was set for February 22, 2005.

31.    On or about July 25, 2002, Ms. Hagenmaier filed with the Ohio Secretary of State a Certificate of Amendment by Shareholders or Members, seeking to amend Collinsworth Enterprises' articles of incorporation and to change the name of Collinsworth Enterprises, Inc. to My Girl Friday, Inc.

32.    On or about August 7, 2002, Collinsworth Enterprises filed with the Ohio Secretary of State a form titled "CONSENT FOR USE OF SIMILAR NAME" authorizing My Girl Friday,

Inc. to use the name "MY GIRL FRIDAY." On or about August 9, 2002, the Ohio Secretary of State acknowledged My Girl Friday, Inc. as an Ohio corporation, Charter No. 911799.

33.     On or about January 17, 2003, Ms. Hagenmaier, on behalf of My Girl Friday, Inc., filed a Name Registration form with the Ohio Secretary of State, seeking to register the name "MY NEIGHBOR," a business that offers "Concierge Services." The Ohio Secretary of State registered "MY NEIGHBOR" on or about January 21, 2003, Registration No. 1363463.

34.     On or about March 24, 2004, Holdings Limited was registered as a limited liability company with the Ohio Secretary of State, Registration No. 1451748. Ms. Hagenmaier was appointed statutory agent for Holdings Limited on or about March 17, 2004, listing her address as 1776 Mentor Avenue, Cincinnati, Ohio 45212. Upon information and belief, Holdings Limited is a corporate entity separate from My Girl Friday, Inc.

35.     Neither Holdings Limited nor My Girl Friday, Inc. filed with the Ohio Secretary of State the form titled "CONSENT FOR USE OF SIMILAR NAME" authorizing Holdings Limited to use the name "MY GIRL FRIDAY."

36.     Form 555 is issued by the Ohio Secretary of State. That form is titled "Trade Mark/Service Mark Application." Form 555 permits any corporation, whether domestic or foreign, to register a trade mark or a service mark with the Ohio Secretary of State. The fee for such a filing is $125.00. An applicant may expedite the processing of its Form 555 by checking a box in the upper right-hand corner of the form and paying an additional $100.00 fee.

37.     Form 555 requires an applicant to certify, for example, that:

(a)     "The applicant is the owner of the trade mark/service mark and no other person has the right to use the mark in the State of Ohio either in the identical form or in such near resemblance as might be calculated to deceive or be mistaken for it."

(b)     "No other person has a registration of the same or of a confusingly similar trade mark/service mark in the United States Patent Office for the same or similar goods."

(c)     The applicant is or is not "the owner of a concurrent registration in the United States Patent Office of this trade mark/service mark covering an area including this State."

38.     On Form 555, services are grouped into certain classes.  Class 45 includes, in part: "Personal and social services rendered by others to meet the needs of individuals . . . ."

39.     At no time relevant herein has Holdings Limited filed a Form 555 with the Ohio Secretary of State seeking to register "MY GIRL FRIDAY."  Instead, neither Collinsworth Enterprises nor My Girl Friday, Inc. paid the required $25.00 fee to renew registration of "MY GIRL FRIDAY" with the Ohio Secretary of State.  By operation of Ohio law, the Ohio Secretary of State canceled the trade name "MY GIRL FRIDAY" on or about February 22, 2005.

40.     Neither Holdings Limited nor the purported mark "MY GIRL FRIDAY" have expanded into 64 markets in the United States.  Ms. Hagenmaier has publicly stated that providers of Girl Friday services in the alleged 64 markets are not building the "MY GIRL FRIDAY" brand or building the "MY GIRL FRIDAY" business.

41.     Upon information and belief, between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised on the website of the National Association of Professional Organizers, http://www.napo.net.

42.     Holdings Limited has adopted a franchise model for conducting its business.  On or about July 20, 2004, Holdings Limited began offering franchises in some states.  Upon information and belief, Holdings Limited has not advertised a "MY GIRL FRIDAY" franchise offering in the District of Columbia.

43.     According to the contents of egirlfriday.com as of the date of this filing, "MY GIRL FRIDAY" franchises are not offered in Maryland or Virginia.

44.     Ms. Hagenmaier stated publicly that her "conservative goal[]" was to sell 7-12 franchises using the purported "MY GIRL FRIDAY" mark before July 20, 2005.

45.     Ms. Hagenmaier also has stated publicly that selling one franchise using the purported "MY GIRL FRIDAY" mark "within 150 days from that July 20th date [i.e., on or about December 18, 2004]" would make her "feel confident" that the franchise model was "successful."

46.     Ms. Hagenmaier has said publicly that "it's important for me to sell the first franchise, and then it's also important for me to make sure that those first couple of franchises, you know, they get my attention so that they can do well.  Now I can't guarantee they're going to do well, obviously, but, you know, I have to work with them closely, because it's such a new concept, and we know that industry experts are watching to see how this works."

47.     According to an article posted on the egirlfriday.com website, Holdings Limited sold only 1 franchise using the purported "MY GIRL FRIDAY" mark as of the end of April 2005.  That franchise was limited to the "western territory of Las Vegas."  No company by the name of "MY GIRL FRIDAY" is registered to do business in the state of Nevada.  No company by the name of "MY GIRL FRIDAY" has a listed address and phone number in Las Vegas, Nevada that is available on the Internet.

48.     Holdings Limited's failure to sell more franchises is due to its failure to have proprietary rights in the purported mark "MY GIRL FRIDAY."

**IV.     "MY GIRL FRIDAY" and the District of Columbia**

49.     Defendant-Counterplaintiff Your Girl Friday, LLC (hereinafter, "YGF") is a small business run by a resident of the District of Columbia.

50.     In March 2004, YGF registered to do business in the District of Columbia under the name "YOUR GIRL FRIDAY, LLC."  On March 16, 2004, the District of Columbia's Department of Consumer and Regulatory Affairs issued a Certificate of Organization to YGF.  On March 23,

16

2004, YGF received its federal employer identification number. On March 29, 2004, YGF received its Notice of Business Tax Registration from the District of Columbia.

51.    Prior to registering in the District of Columbia, YGF caused to be performed a search of District of Columbia public records to determine whether any other entity in the District of Columbia was doing business, or was otherwise using the name, "GIRL FRIDAY." The search was conducted by the District of Columbia's Department of Consumer and Regulatory Affairs. The search revealed no entity registered in the District of Columbia that used "GIRL FRIDAY" in its name.

52.    Holdings Limited is neither a domestic entity organized in the District of Columbia nor a foreign entity registered to transact business in the District of Columbia.

53.    MGF Holdings, Inc. is neither a domestic entity organized in the District of Columbia nor a foreign entity registered to transact business in the District of Columbia.

54.    My Girl Friday, Inc. is neither a domestic entity organized in the District of Columbia nor a foreign entity registered to transact business in the District of Columbia.

55.    MY GIRL FRIDAY is neither a domestic entity organized in the District of Columbia nor a foreign entity registered to transact business in the District of Columbia.

56.    YGF provided services to customers in the District of Columbia beginning in April 2004. YGF began advertising its services in the District of Columbia in May 2004.

57.    Between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised in *The Current*.

58.    Upon information and belief, between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised in the *Washington Post*.

59.    Upon information and belief, between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised in the *Washington Times*.

60.    Upon information and belief, between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised in *The Washingtonian*.

61.    Upon information and belief, between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised on any radio station that broadcasts in the District of Columbia.

62.    Upon information and belief, between January 2003 and the present, the purported mark "MY GIRL FRIDAY" allegedly owned by Holdings Limited has not been advertised on any television station that broadcasts in the District of Columbia.

63.    Between January 2003 and the present, Holdings Limited has provided *de minimis*, if any, services under the purported mark "MY GIRL FRIDAY" in the District of Columbia.

## CLAIMS FOR RELIEF

### COUNT ONE
### Declaratory Judgment
### (The Purported Mark is Generic)

64.    YGF incorporates paragraphs 1-63 of these Counterclaims as if fully set forth herein.

65.    Pursuant to 28 U.S.C. § 2201, YGF seeks a declaration of its right to continue doing business in the Washington, D.C. metropolitan area (which includes the District of Columbia, Maryland, and Virginia) as YOUR GIRL FRIDAY, LLC and a declaration that YGF is not infringing on any of Holdings Limited's alleged rights under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and not violating District of Columbia law.

66.    Holdings Limited alleges that it owns actionable proprietary rights in the purported service mark "MY GIRL FRIDAY."  YGF contends that Holdings Limited has no actionable propriety rights in "MY GIRL FRIDAY."

67.    Based on the parties' differing interpretations of the proprietary rights in "MY GIRL FRIDAY," YGF seeks a declaratory judgment that:

(a)    The purported service mark "MY GIRL FRIDAY" is generic.

(b)    Holdings Limited does not own any actionable proprietary rights to "MY GIRL FRIDAY" under the Lanham Act, 15 U.S.C. § 1051 *et seq.* or under District of Columbia law.

### COUNT TWO
### Declaratory Judgment
### (In the Alternative)
### (The Purported Mark is Highly Descriptive with no Secondary Meaning)

68.    YGF incorporates paragraphs 1-67 of these Counterclaims as if fully set forth herein.

69.    Pursuant to 28 U.S.C. § 2201, YGF seeks a declaration of its right to continue doing business in the Washington, D.C. metropolitan area (which includes the District of Columbia, Maryland, and Virginia) as YOUR GIRL FRIDAY, LLC and a declaration that YGF is not infringing on any of Holdings Limited's alleged rights under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and not violating District of Columbia law.

70.    Holdings Limited alleges that (a) consumers have come to recognize Holdings Limited's service mark "MY GIRL FRIDAY" as identifying Holdings Limited and its concierge services, and (b) the "MY GIRL FRIDAY" service mark has become well and favorably known to the public.  YGF contends that, at best, "MY GIRL FRIDAY" is highly descriptive and has not acquired secondary meaning.

71.    Based on the parties' differing interpretations of the proprietary rights in "MY GIRL FRIDAY," YGF seeks a declaratory judgment that:

(a)    The purported service mark "MY GIRL FRIDAY" is highly descriptive.

(b)    The purported service mark "MY GIRL FRIDAY" has not acquired secondary meaning.

(c)    Holdings Limited does not own any actionable proprietary rights to "MY GIRL FRIDAY" under the Lanham Act, 15 U.S.C. § 1051 *et seq.* or under District of Columbia law.

**COUNT THREE**
**Declaratory Judgment**
**(In the Alternative)**
**(No Actual or Likely Confusion)**

72.    YGF incorporates paragraphs 1-71 of these Counterclaims as if fully set forth herein.

73.    Pursuant to 28 U.S.C. § 2201, YGF seeks a declaration of its right to continue doing business in the Washington, D.C. metropolitan area (which includes the District of Columbia, Maryland, and Virginia) as YOUR GIRL FRIDAY, LLC and a declaration that YGF is not infringing on any of Holdings Limited's alleged rights under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and not violating District of Columbia law.

74.    Holdings Limited alleges that (a) "YOUR GIRL FRIDAY" is confusingly similar to "MY GIRL FRIDAY," and (b) YGF's use of "YOUR GIRL FRIDAY" in the District of Columbia is likely to cause confusion, mistake, and deception and to lead Holdings Limited's District of Columbia clients and potential clients of Holding Limited's services into wrongly believing that YGF's services are authorized by, licensed by, sponsored by, related to, or otherwise associated with Holdings Limited. YGF contends that "YOUR GIRL FRIDAY" has not caused confusion, and is not likely to cause confusion, among consumers within the District of Columbia or to otherwise deceive District of Columbia consumers into believing that YGF is in any way affiliated with Holdings Limited.

75.     Based on the parties' differing interpretations of their rights, YGF seeks a declaratory judgment that:

(a)     Consumers in Washington, D.C. are not confused or deceived into believing that the purported mark "MY GIRL FRIDAY" is similar to "YOUR GIRL FRIDAY."

(b)     Consumers in Washington, D.C. are not likely to be confused or deceived into believing that the purported mark "MY GIRL FRIDAY" is similar to "YOUR GIRL FRIDAY."

(c)     There is a low, if any, degree of similarity between the purported mark "MY GIRL FRIDAY" and "YOUR GIRL FRIDAY."

(d)     YGF did not intend to adopt, and in fact did not adopt, the purported "MY GIRL FRIDAY" mark.

(e)     YGF's intent to use "YOUR GIRL FRIDAY" was to denote its services, and YGF has at all relevant times done so in good faith.

(f)     There is no evidence that any consumers in Washington, D.C. were actually confused into believing that "YOUR GIRL FRIDAY" was associated in any way with the purported mark "MY GIRL FRIDAY" or with Holdings Limited.

(g)     YGF does not use or market its services in the District of Columbia in a manner similar to Holdings Limited's alleged use or marketing of the purported mark "MY GIRL FRIDAY" in the District of Columbia.

(h)     Purchasers of "Girl Friday" services in the District of Columbia are not likely to exercise a great deal of care in choosing a provider of "Girl Friday" services.

(i)     The purported mark "MY GIRL FRIDAY" is extremely weak.

## COUNT FOUR
### Declaratory Judgment
### (In the Alternative)
### (Fair Use)

76.    YGF incorporates paragraphs 1-75 of these Counterclaims as if fully set forth herein.

77.    Pursuant to 28 U.S.C. § 2201, YGF seeks a declaration of its right to continue doing business in the Washington, D.C. metropolitan area (which includes the District of Columbia, Maryland, and Virginia) as YOUR GIRL FRIDAY, LLC and a declaration that YGF is not infringing on any of Holdings Limited's alleged rights under the Lanham Act, 15 U.S.C. § 1051 *et seq.* and not violating District of Columbia law.

78.    Holdings Limited alleges that YGF's use of "YOUR GIRL FRIDAY" is not a fair use.  YGF contends that its use of "YOUR GIRL FRIDAY" is a fair use because YGF has always used that name to denote its services and, at all times relevant herein, has done so in good faith.

79.    Based on the parties' differing interpretations of their rights, YGF seeks a declaratory judgment that YGF is not liable under the Lanham Act, 15 U.S.C. § 1051 *et seq.* or District of Columbia law because YGF's use of "YOUR GIRL FRIDAY" is a fair use.

## COUNT FIVE
### Attorneys' Fees

80.    YGF incorporates paragraphs 1-79 of these Counterclaims as if fully set forth herein.

81.    YGF is entitled to recover its reasonable attorneys' fees pursuant to section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a), because this is an "exceptional case[]."

82.    Holdings Limited's lawsuit against YGF is oppressive and not supported by law or by facts that Holdings Limited knew, or in the exercise of reasonable diligence, should have known before initiating this litigation.

83.    Holdings Limited's lawsuit against YGF has been brought to harass, embarrass, and injure YGF, and to force YGF to spend thousands of dollars in attorneys' fees, expenses, and costs.

84.     Holding Limited's franchise business is fledgling.

85.     Upon information and belief, Holdings Limited has sold only 1 franchise since Holdings Limited first began offering "MY GIRL FRIDAY" franchises in July 2004.

86.     Holdings Limited has initiated this litigation against YGF to force YGF to become a "MY GIRL FRIDAY" franchisee and to pay Holdings Limited thousands of dollars in franchise fees and costs.

87.     Holdings Limited's lawsuit is baseless because Holdings Limited knows that the purported mark "MY GIRL FRIDAY" is generic or highly descriptive with no secondary meaning.

88.     Holdings Limited knowingly and intentionally omitted from its complaint against YGF well-known, publicly available facts that were in existence at the time Holdings Limited initiated litigation against YGF.

89.     The following facts, among others, bear directly on Holdings Limited's claims against YGF, but were knowingly and intentionally omitted from Holdings Limited's complaint:

(a)     Holdings Limited has a federal trademark application pending before the PTO, which seeks to register "MY GIRL FRIDAY" as a service mark.

(b)     The PTO has not published Holdings Limited's application for opposition as of the date of this filing.

(c)     The PTO required Holdings Limited to include a disclaimer in its trademark application.

(d)     Holdings Limited agreed to include the following disclaimer in its trademark application: "NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE 'GIRL FRIDAY' APART FROM THE MARK AS SHOWN."

(e)     On or about March 14, 2005, Holdings Limited's current counsel asked the PTO to remove the disclaimer.

(f)     As of the date of this filing, the PTO has refused to remove the disclaimer.

90.     Holdings Limited has omitted these well-known, material facts from its complaint against YGF to convey the false impression that the purported mark "MY GIRL FRIDAY" is not generic or is not an otherwise highly descriptive mark with no secondary meaning.

91.     Holdings Limited has initiated this litigation against YGF to collaterally attack the disclaimer that is part of Holdings Limited's pending federal trademark application.

92.     Holdings Limited has initiated this litigation to drain YGF's resources to the point that it no longer is able to defend itself in this Court.

93.     Holdings Limited has initiated this litigation against YGF to ensure that YGF will not file with the PTO an opposition to Holdings Limited's pending trademark application.

94.     Prior to initiating this litigation, Holdings Limited stated that a YGF opposition to Holdings Limited's federal trademark application would be "frivolous" because YGF is a small company, not because such an opposition would lack merit.

95.     Holdings Limited has no reasonable grounds, after conducting the appropriate inquiry mandated by the Federal Rules of Civil Procedure, for making the following allegations in the underlying complaint against YGF:

(a)     "Since its inception, [Holdings Limited] has expanded from the Cincinnati, Ohio area into 64 other markets, including the Washington, D.C. metropolitan area."

(b)     "By virtue of [Holdings Limited's] commercial success and promotion, consumers have come to recognize [Holdings Limited's] service mark 'MY GIRL FRIDAY' as identifying [Holdings Limited] and its concierge services, and as a result its 'MY GIRL FRIDAY' service mark has become well and favorably known to the public."

(c)     "Recently [Holdings Limited] learned that [YGF] was using the name 'YOUR GIRL FRIDAY' for the same type of concierge services as offered by [Holdings Limited] in the Washington, D.C. area."

(d)     "[YGF's] use of 'YOUR GIRL FRIDAY' for concierge services has caused and is likely to continue to cause confusion, mistake and deception, and to lead clients and potential clients of [Holdings Limited's] services into believing that [YGF's] services are authorized by, licensed by, sponsored by, related to, or otherwise associated with [Holdings Limited] when in fact they are not."

(e)     Holdings Limited "has been damaged and unless [YGF] is enjoined from further use of 'YOUR GIRL FRIDAY' and any other name confusingly similar to 'MY GIRL FRIDAY' for concierge services, the damage to [Holdings Limited], which is irreparable, will increase."

(f)     YGF's "unauthorized use of 'YOUR GIRL FRIDAY' as described herein is likely to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of the services that [YGF] provides."

(g)     YGF's "unauthorized use of 'YOUR GIRL FRIDAY' as described herein is likely to cause confusion and misunderstanding as to the affiliation, connection or association with, or certification by [Holdings Limited]."

(h)     "As a result of [YGF's] activities, [Holdings Limited] has been damaged and has suffered injury to their business reputation and good will."

96.     Holdings Limited has exhibited a reckless disregard for the truth and has ignored publicly available evidence, including statements binding on Holdings Limited, that contradict the allegations made against YGF, including, but not limited to, the allegations recited in paragraphs 95(a)-(h) of these Counterclaims.

## COUNT SIX
### Unfair Competition

97.    YGF incorporates paragraphs 1-96 of these Counterclaims as if fully set forth herein.

98.    Holdings Limited has engaged in unfair competition.

99.    Holdings Limited has knowingly and intentionally sought to monopolize the common phrase "GIRL FRIDAY."

100.    Holdings Limited's acts of unfair competition and monopolistic practices have caused YGF damages in an amount to be proven at trial.

101.    Upon information and belief, Holdings Limited has engaged in a pattern and practice of unfair competition with regard to the purported mark "MY GIRL FRIDAY."

102.    YGF is entitled to punitive damages to punish and deter Holdings Limited from engaging in similar acts of unfair competition in the future.

### PRAYER FOR RELIEF

WHEREFORE, Defendant-Counterplaintiff YGF prays that, upon final judgment, it has judgment as follows:

1.    Dismissing with prejudice Holdings Limited's complaint against YGF.

2.    A declaration that

    (a)    YGF is not infringing on any alleged proprietary rights of Holdings Limited.

    (b)    The purported service mark "MY GIRL FRIDAY" is generic and that Holdings Limited therefore has no proprietary rights in "MY GIRL FRIDAY" under the Lanham Act or District of Columbia law.

    (c)    In the alternative, the purported service mark "MY GIRL FRIDAY" is highly descriptive with no secondary meaning and that Holdings Limited therefore has no proprietary rights in "MY GIRL FRIDAY" under the Lanham Act or District of Columbia law.

(d)     In the alternative, "YOUR GIRL FRIDAY" is not confusing, and it is not likely to be confusingly similar, to the purported mark "MY GIRL FRIDAY."

(e)     In the alternative, YGF's use of "YOUR GIRL FRIDAY" is a fair use.

3.      Against Holdings Limited for YGF's reasonable attorneys' fees and expenses incurred in the prosecution and defense of this case and on appeal, if necessary.

4.      Against Holdings Limited for all costs of Court.

5.      Against Holdings Limited for punitive damages.

6.      Against Holdings Limited for prejudgment and post-judgment interest.

7.      Against Holdings Limited for all other and further relief, both at law and in equity, to which YGF may show itself justly entitled.

## DEMAND FOR A JURY TRIAL

YGF demands a jury trial on all issues so triable.

Dated: August 5, 2005                          Respectfully submitted,
       Washington, D.C.

                                               /s/_____
                                               Ugo Colella (D.C. Bar No. 473348)
                                               Deborah M. Lodge (D.C. Bar No. 393942)
                                               PATTON BOGGS LLP
                                               2550 M Street, N.W.
                                               Washington, D.C. 20037
                                               Phone: (202) 457-5693
                                               Fax:    (202) 457-6315

                                               *Attorneys for Defendant-Counterplaintiff*
                                               *Your Girl Friday, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 5, 2005, a copy of the foregoing Answer to Plaintiff's Complaint and Counterclaims of Defendant Your Girl Friday, LLC was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/_____
Ugo Colella